UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KERRIION POPE,

            Petitioner,

v.                               Case No. 4:23-CV-12554
                               F. Kay Behm
                               United States District Court Judge

JOHN CHRISTIANSON,

            Respondent,

_____/

**OPINION AND ORDER DENYING THE PETITION
FOR WRIT OF HABEAS CORPUS, DECLINING TO
ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL _IN FORMA PAUPERIS_**

Kerriion Pope, ("Petitioner"), incarcerated at the St. Louis Correctional

Facility in St. Louis, Michigan, filed a _pro se_ petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for first-degree

felony murder, Mich. Comp. Laws § 750.316(1)(b), armed robbery, Mich. Comp.

Laws § 750.529, two counts of possession of a firearm in the commission of a

felony (felony-firearm), Mich. Comp. Laws § 750.227b, and two counts of witness

bribing/intimidation/interference, Mich. Comp. Laws § 750.122(7)(b).

For the reasons that follow, the petition for writ of habeas corpus is

**DENIED WITH PREJUDICE**.

1

# I.    Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with co-defendant Ajhaun Lynn Davis but by separate juries. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the shooting death of Marquis Hill on April 22, 2019 in Inkster, Michigan. Keilon Pope (Keilon) testified at trial [1] that he was Pope's older brother and a close friend of Davis's. He lived at 4442 Spruce Street in Inkster with his girlfriend, Pope, and several other family members. Keilon claimed, however, that he could not remember anything about the shooting, about having answered questions in response to an investigative subpoena, or about previously testifying in this case. Over defense counsels' objections, the trial court agreed that the prosecution could admit Keilon's April 24, 2019 investigative subpoena testimony as substantive evidence.
>
> In pertinent part, Keilon previously testified that Davis had called him on the morning of April 22, 2019, and had told Keilon that "he had a lick on the floor," which Keilon understood to refer to a robbery. Davis asked if Pope was there and whether Pope's .45 caliber pistol was at the house. Keilon testified that he anticipated that Davis would be coming over to the house to get Pope's gun to use in a robbery. Pope returned home around noon, and Davis arrived approximately 45 minutes later. Keilon testified that he and several others, including Davis, were outside smoking marijuana while Davis exchanged text messages with Hill trying to arrange a place to meet so that Davis could purchase marijuana from Hill. Pope and Davis eventually left the house together; Keilon testified that he believed, based on the way he carried himself and adjusted his jacket, that Pope was armed with

---

[1] Keilon testified under a grant of immunity. (Footnote original.)

2

his pistol. Approximately 10 to 15 minutes later, Keilon heard several gunshots.

Pope and Davis ran back to Pope's house together. Although Keilon testified that he did not see a gun, he noticed that Davis had a black backpack that Keilon believed was filled with marijuana. According to Keilon, Pope admitted shooting Hill, but claimed that he did so only because Hill had reached for a gun. While Pope was showering, Davis told Keilon that he returned to Hill's vehicle to retrieve the backpack with the marijuana after Pope shot Hill. A friend of Davis's testified that she was present at the home that day and also observed Davis with a black backpack she had not seen before. Pope's girlfriend testified that Pope had admitted his involvement in the incident and that he "hit a lick" or robbed someone for marijuana with the assistance of a person she did not know.

Both defendants elected to take the stand in their own defense and provided substantially similar testimony about the shooting. Davis explained that he had a history of purchasing marijuana from Hill and arranged a deal with Hill on April 22, 2019, because Hill had indicated that he had high-quality marijuana available at a low price. Davis and Pope met with Hill and entered his car, with Hill in the driver's seat, Davis in the front passenger seat, and Pope in the backseat. Pope and Davis both planned to make a purchase, but when Hill arrived they realized the marijuana was not of satisfactory quality. Davis told Hill that he was no longer interested, prompting Hill to point a gun at Davis and demand that Davis, "[G]ive [him] everything." Pope testified that he then fired his gun in the direction of the front driver's seat, believing that Hill was about to shoot Davis. The three men exited the vehicle as Hill and Pope continued to exchange gunfire. Defendants said they ran back to Pope's house without taking any of Hill's marijuana. Davis specifically denied ever possessing a black backpack, full of marijuana or otherwise, on the day of the shooting.

Pope's trial testimony differed significantly from the statement he gave to police after the shooting, at which time he admitted that he and Davis had planned to rob Hill. Pope told police that Davis had contacted him about a robbery, that Davis had brought the gun, and that, during the

3

exchange with Hill, Pope did not fire a gun but did "hear[ ] a shot go off."

*People v. Davis*, No. 352161, 2022 WL 881145, at *1–2 (Mich. Ct. App. Mar. 24, 2022).

Petitioner's conviction was affirmed but his case was remanded for re-sentencing on the armed robbery conviction. *Id.*; *lv. den. sub nom. People v. Pope*, 510 Mich. 865, 977 N.W.2d 558 (2022).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. "The trial court erred by admitting Keilon Pope's investigative subpoena testimony as substantive evidence." (ECF No. 1, PageID.10.)

II. "Defendant's trial counsel provided constitutionally ineffective assistance where he failed to: (a) move to sever Mr. Pope's trial from Mr. Davis' trial, [and] (b) properly prepare Mr. Pope to testify on his own behalf." (ECF No. 1, Page1D.12.)

## II. Standard of Review

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme
Court of the United States; or
(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if
the state court arrives at a conclusion opposite to that reached by the Supreme
Court on a question of law or if the state court decides a case differently than the
Supreme Court has on a set of materially indistinguishable facts. *Williams v.
Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when
"a state court decision unreasonably applies the law of [the Supreme Court] to the
facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the
writ simply because that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal law erroneously or
incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks
merit precludes federal habeas relief so long as 'fairminded jurists could disagree'
on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.
86, 101 (2011). To obtain habeas relief in federal court, a state prisoner is required
to show that the state court's rejection of his or her claim "was so lacking in
justification that there was an error well understood and comprehended in existing
law beyond any possibility for fairminded disagreement." *Id.,* at 103.

## III. Discussion

### A. Claim # 1. The claim involving Keilon Pope's testimony.

Petitioner first argues that the trial court erred by admitting his brother Keilon Pope's investigative subpoena testimony as substantive evidence.

Petitioner initially argues that Keilon Pope's investigative subpoena testimony was inadmissible hearsay under M.R.E. 801(d)(1) because Keilon's trial testimony was not inconsistent with his testimony at the investigative subpoena hearing. Petitioner also argues that it was not admissible under M.R.E. 804(b)(1) because the prosecutor at the investigative subpoena hearing did not have the same motive and opportunity to develop Keilon's testimony at that hearing as the trial prosecutor's motive for developing Keilon's testimony at trial.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x 147,

150 (6th Cir. 2003); *See also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights).  In addition, the admission of a witness' investigative subpoena testimony in violation of state law does not entitle a petitioner to habeas relief. *See e.g. White v. Woods*, 539 F. App'x 690, 691 (6th Cir. 2013).

The Michigan Court of Appeals held that Keilon's trial testimony was inconsistent with his investigative subpoena hearing testimony because he testified at trial that he could not remember anything about the events involving the shooting, nor did he recall making any of the incriminating statements in the transcript of his former testimony.  Michigan case law clearly indicates that "evasive answers" and an "inability to recall" are inconsistent testimony that allows prior sworn statements to be admissible under M.R.E. 801(d)(1)(A). *People v. Davis*, 2022 WL 881145, at * 6 (citing *People v. Chavies*, 234 Mich. App. 274, 282, 593 N.W.2d 655, 658 (1999), *overruled in part on other gounds by People v. Williams*, 475 Mich. 245, 716 N.W.2d 208 (2006)).

Under both federal and Michigan law, a prior inconsistent statement that is made under oath is not considered hearsay and can be used as substantive

evidence. *See United States v. Ricketts,* 317 F.3d 540, 544 (6th Cir. 2003)(citing

F.R.E. 801(d)(1)(A)); *People v. Chavies,* 234 Mich. App. at 281-84 (citing M.R.E.

801(d)(1)(A)). This Court must defer to the Michigan Court of Appeals'

determination that Keilon Pope's investigative subpoena testimony was a prior

inconsistent statement that was admissible under M.R.E. 801(d)(1)(A) and thus

cannot grant habeas relief for any alleged violation of Michigan's Rules of

Evidence.

Petitioner also alleges that the admission of Keilon Pope's investigative

subpoena testimony violated his Sixth Amendment right of confrontation.

Respondent argues that Petitioner's Confrontation Clause claim is

procedurally defaulted because he failed to properly preserve this claim for

appellate review at the trial court level in that Petitioner did not object to the

admission of Keilon Pope's testimony on the ground that it violated his Sixth

Amendment right of confrontation but only that the testimony was inadmissible

under state law.

When the state courts clearly and expressly rely on a valid state procedural

bar, federal habeas review is also barred unless petitioner can demonstrate "cause"

for the default and actual prejudice as a result of the alleged constitutional

violation, or can demonstrate that failure to consider the claim will result in a

"fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51

(1991).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

The Sixth Circuit has ruled that "where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018).

The Michigan Court of Appeals noted that although Petitioner had objected to the admission of the investigative subpoena testimony as a violation of the evidentiary rules, he did not object on the basis that the admission of Keilon Pope's investigative subpoena testimony violated the Confrontation Clause, hence, Petitioner's confrontation claim was unpreserved and would be reviewed for plain error. *People v. Davis*, 2022 WL 881145, at * 5-7.

Michigan law requires defendants in criminal cases to present their claims in the trial courts in order to preserve them for appellate review. *See People v. Carines,* 460 Mich. 750, 761-64; 597 N.W.2d 130 (1999). Under Michigan law, "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v. Thorpe*, 504 Mich. 230, 252, 934 N.W.2d 693 (2019). Petitioner's counsel did not object to the admission of the investigative subpoena testimony on the ground that it violated Petitioner's Sixth Amendment right to confrontation.

By failing to object to the admission of the investigative subpoena testimony on the basis that it violated Petitioner's right to confrontation, Petitioner failed to properly preserve his Sixth Amendment claim for appellate review. The fact that the Michigan Court of Appeals engaged in plain error review of Petitioner's Confrontation Clause claim does not constitute a waiver of the state procedural default. *Seymour v. Walker*, 224 F.3d at 557.  Instead, this Court should view the Michigan Court of Appeals' review of Petitioner's Sixth Amendment claim for plain error as enforcement of the procedural default. *Hinkle v. Randle*, 271 F. 3d 239, 244 (6th Cir. 2001).

Petitioner offered no reasons for his failure to preserve his investigative subpoena testimony claim as a violation of his Sixth Amendment right to

confrontation at the trial level.  Petitioner did not raise a claim of ineffective

assistance of counsel, or any other reason, to excuse the procedural default.  By

failing to raise any claim or issue to excuse the procedural default, Petitioner "has

forfeited the question of cause and prejudice." *Rogers v. Skipper*, 821 F. App'x

500, 503 (6th Cir. 2020).

Additionally, Petitioner has not presented any new reliable evidence to

support any assertion of innocence which would allow this Court to consider his

defaulted Confrontation Clause claim as a ground for a writ of habeas corpus in

spite of the procedural default.  Petitioner does not deny shooting the victim but

claims he did so in self-defense.  There is some question as to whether Petitioner's

self-defense claim amounts to a claim of factual innocence which would satisfy the

fundamental miscarriage exception to the procedural default rule. *See Caldwell v.

Russell*, 181 F.3d 731, 739-40 (6th Cir. 1999).  In the statute of limitations context,

the Sixth Circuit has held that a habeas petitioner's claim that he acted in self-

defense amounted to a claim of legal innocence, as opposed to factual innocence,

and would therefore not toll the limitations period. *See Harvey v. Jones,* 179 F.

App'x 294, 298-99 (6th Cir. 2006) (collecting cases).  The Sixth Circuit has also

held the same in a case where a habeas petitioner sought habeas relief on an actual

innocence claim. *See Valentin v. Tanner*, No. 23-1207, 2023 WL 5748143, at *2

(6th Cir. Sept. 1, 2023) (even if habeas relief was available on a freestanding actual

innocence claim, petitioner's claim of "self-defense demonstrates legal innocence, not actual innocence, because it does not show that the petitioner was factually innocent of killing the victim.").

Finally, assuming that Petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his Confrontation claim would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F.3d 883, 891 (6th Cir. 2007).

The admission of Keilon Pope's investigative subpoena testimony did not violate Petitioner's Sixth Amendment right to confrontation because Keilon Pope testified at trial and was subject to cross-examination by both Petitioner's counsel and co-defendant's counsel.

There is no Confrontation Clause problem when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988); *See also Crawford v. Washington,* 541 U.S. 36, 59, n. 9 (2004); *U.S. v. Mayberry*, 540 F.3d 506, 516 (6th Cir. 2008). The admission of a witness's prior inconsistent statement pursuant to F.R.E. 801(d)(1)(A) does not violate the Confrontation Clause where the witness testifies at trial, concedes making the prior statements, and is subject to cross-examination. *See California v. Green,* 399 U.S. 149, 164 (1969); *Mayberry,* 540 F.3d at 516.

Petitioner argues that he did not have an adequate opportunity to cross-examine Keilon Pope because his brother claimed he could not remember the shooting nor recall making the statements at the investigative subpoena hearing.

The Sixth Amendment Confrontation Clause guarantees criminal defendants an "adequate opportunity to cross-examine adverse witnesses." *United States v. Owens*, 484 U.S. at 557 (1988)(citing *Mattox v. United States*, 156 U.S. 237, 242–243 (1895); *Douglas v. Alabama*, 380 U.S. 415, 418 (1965)). The clause does not guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Owens*, 484 U.S. at 559.

Petitioner and his co-defendant were not denied an effective opportunity to cross-examine Keilon Pope simply because Petitioner's brother claimed he could not remember the events surrounding the shooting or recall what he said at the investigative subpoena hearing. The Supreme Court "has never held that a Confrontation Clause violation can be founded upon a witness' loss of memory, but in two cases has expressly left that possibility open." *United States v. Owens*, 484 U.S. at 557.

In *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985), the Supreme Court held that the trial court's admission into evidence of an agent's opinion did not offend the Confrontation Clause despite his inability to recall the basis for that opinion while testifying. "The Confrontation Clause includes no guarantee that every

witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *Fensterer*, 474 U.S. at 21–22.  Instead, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Id.* at 22.

In *Owens*, the Supreme Court held that the confrontation rights of a defendant were not violated by the introduction of the victim's out-of-court identification of the defendant as an assailant, even though the victim was unable to testify as to his basis for identifying the defendant due to actual and complete memory loss. *Owens*, 484 U.S. at 559–60.  The Supreme Court opined that because the victim was present at trial and subject to unrestricted cross-examination, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Id.* at 560. The Supreme Court stated, "We do not think that a constitutional line drawn by the Confrontation Clause falls between a forgetful witness' live testimony that he once believed this defendant to be the perpetrator of the crime, and the introduction of the witness' earlier statement to that effect." *Id.* The Court further stated, "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-

examination is not the constitutional guarantee." *Id.* at 560. Ultimately, the

Supreme Court held that "neither the Confrontation Clause nor Federal Rule of

Evidence 802 is violated by admission of an identification statement of a witness

who is unable, because of a memory loss, to testify concerning the basis for the

identification." *Id.* at 564. Petitioner is not entitled to relief on his claim.

### B. Claim # 2. The ineffective assistance of counsel claim.

Petitioner next alleges he was denied the effective assistance of trial counsel.

A defendant is required to satisfy a two prong test to establish the denial of the

effective assistance of counsel.  First, the defendant must show that counsel's

performance was so deficient that the attorney was not functioning as the

"counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466

U.S. 668, 687 (1984).  The defendant must overcome a strong presumption that

counsel's behavior was within the wide range of reasonable professional

assistance. *Id*.  Stated differently, the defendant must overcome the presumption

that, under the circumstances, the challenged action might be sound trial strategy.

*Strickland,* 466 U.S. at 689.  Second, the defendant must show that such

performance prejudiced his or her defense. *Id*.  To demonstrate prejudice, the

defendant must establish that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland,* 466 U.S. at 694.  *Strickland* places the burden on the

15

defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Petitioner initially argues that trial counsel was ineffective for failing to move for a separate trial from his co-defendant.

The Michigan Court of Appeals rejected Petitioner's claim, finding that trial counsel was not ineffective for failing to move for a separate trial because Petitioner's defense was not antagonistic to his co-defendant's defense:

> "Under MCR 6.121(C), the trial court 'must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant.'" *People v Furline*, 505 Mich. 16, 20, 949 N.W.2d 666 (2020). Pope argues that he was prejudiced by the joint trial because, due to the erroneous admission of Keilon's investigative subpoena testimony, both defendants felt compelled to testify to contradict those accusations, and the juries should not have been permitted to hear both defendants testify to their versions of events. Essentially, Pope argues that Davis and Pope each sought to place the blame on the other defendant for the events surrounding the shooting. Severance may indeed be warranted when joint defendants present mutually exclusive or antagonistic defenses that create a serious risk of prejudice. *Id.* at 21, 949 N.W.2d 666. But requisite prejudice only occurs when "the competing defenses are so antagonistic at their cores that both cannot be believed." *Id.* (quotation marks and citation omitted). Here, Davis's testimony and theory of the case was not antagonistic to Pope's defense. They both testified to essentially the same version of events, in which Davis had arranged a marijuana purchase from Hill and Pope shot Hill after Hill attempted to rob them at gunpoint. Although each defendant may have tried to minimize his own role in the events and to emphasize the culpability of the other,

their versions were not factually inconsistent or otherwise impossible to both be believed. Because defendants relied on the same defense, there was no basis to sever the trial, and defense counsel was not ineffective in failing to seek severance before trial. *Id.*

The United States Supreme Court has observed that "joint trials have long 'play[ed] a vital role in the criminal justice system,' preserving government resources and allowing victims to avoid repeatedly reliving trauma." *Samia v. United States*, 599 U.S. 635, 654 (2023) (quoting *Richardson v. Marsh,* 481 U.S. 200, 209 (1987)).  In addition, "joint trials encourage consistent verdicts and enable more accurate assessments of relative culpability." *Id.*

"[U]nder Michigan law, severance is required only when a defendant shows that it is necessary to avoid prejudice to his substantial rights." *Clark v. McLemore,* 291 F. Supp. 2d 535, 545 (E.D. Mich. 2003)(citing M.C.R. 6.121(C)). "[T]here is no absolute right to a separate trial, and joint trials are strongly favored 'in the interest of justice, judicial economy and administration.'" *Id.* (quoting *People v. Etheridge*, 196 Mich. App. 43, 52; 492 N.W. 2d 490 (1992)).  Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *People v. Hana*, 447 Mich. 325, 359-60; 524 N.W. 2d 682 (1994)).  Finally, under M.C.R. 6.120(B), a court must sever offenses that are not related as defined in MCR 6.120(B).  MCR 6.120(B) defines

17

related offenses that are those "based on (1) the same conduct, or (2) a series of connected acts or acts constituting part of a single scheme or plan."

A criminal defendant is not entitled to a separate trial merely because he or she may have had a better chance for acquittal in a separate trial, *Zafiro v. United States*, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses. *Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001).  The Supreme Court, in fact, has indicated that "[M]utually antagonistic defenses are not prejudicial *per se*." *Zafiro v. United States,* 506 U.S. at 538.  A court should grant severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. Indeed, the mere fact that codefendants will present antagonistic defenses does not require severance. Severance is justified only if the presentation of these defenses in the same trial will mislead or confuse the jury. *United States v. Critton*, 43 F.3d 1089, 1098 (6th Cir. 1995) (citing *United States v. Vinson*, 606 F.2d 149, 154 (6th Cir.1979)). A habeas petitioner who seeks habeas relief based on a state trial court's refusal to sever his or her trial from his or her co-defendant's trial bears a very heavy burden. *Stanford*, 266 F.3d at 459.  Joinder of defendants for trial is preferred, which creates a presumption in favor of joinder which must be overcome by the party

18

seeking severance. *See Foster v. Withrow,* 159 F. Supp. 2d 629, 641 (E.D. Mich. 2001).

Petitioner failed to show that he was entitled to a separate trial. Mr. Davis' defense was not antagonistic to Petitioner's defense. Antagonistic defenses occur "when one person's claim of innocence is predicated solely on the guilt of a co-defendant." *United States v. Harris,* 9 F.3d 493, 501 (6th Cir. 1993). Petitioner and Mr. Davis presented the same defense, namely, a theory of self-defense and defense of others. Petitioner and his co-defendant each testified that the victim pulled a gun on them after Davis smelled the marijuana and did not think it was the good stuff. (ECF No. 12-23, PageID.2484-86, 2559-62). Petitioner testified this is when he pulled out his gun and shot at the victim, claiming he did so in self-defense. (*Id.,* PageID.2485-86). Although Petitioner tried to minimize his role in the crime by suggesting that it was Davis who set up the drug deal, this would not entitle him to a separate trial. "While a defendant who tries to minimize his role while emphasizing the participation of other actors 'may have a better chance of acquittal in [a] separate trial[,]' this does not entitle him to severance." *United States v. Ortiz*, 315 F.3d 873, 898 (8th Cir. 2002) (quoting *Zafiro,* 506 U.S. at 540.

The preference under Michigan law for joint trials, combined with the fact that no reasonable argument could be made that Petitioner and his co-defendant had irreconcilable defenses suggests that any motion to sever that might have been

made by Petitioner's lawyer would have met with failure. *See e.g. Van v. Jones,* 475 F.3d 292, 314 (6th Cir. 2007).  In light of the fact that the co-defendant's defense was not mutually antagonistic with Petitioner's defense, counsel was not ineffective for agreeing to a joint trial. *See Lang v. Gundy,* 399 F. App'x 969, 975-76, 978 (6th Cir. 2010). Petitioner is therefore unable to show any prejudice from counsel's failure to move for severance, because it is clear from the Michigan Court of Appeals' decision that the motion would have most certainly been denied. *See McQueen v. Scroggy,* 99 F. 3d 1302, 1316 (6th Cir. 1996).  Petitioner is not entitled to habeas relief on his first ineffective assistance of counsel claim.

Petitioner next claims that trial counsel was ineffective for failing to adequately prepare him to testify, because it left Petitioner unprepared to answer a question from the jury about why he would own an unregistered gun and be involved in a crime.

The Michigan Court of Appeals rejected the claim:

> Pope also argues that he was denied the effective assistance of counsel when his attorney failed to adequately prepare him to testify, thereby leaving Pope unprepared to respond to a question from the jury about why he would own an unregistered gun and be involved in a crime. We disagree. Lawyers are not omniscient; the effective assistance of counsel does not require an attorney to foresee every question that might be asked of a witness, especially on matters tangential to the key issues in dispute. Moreover, Pope swore or affirmed, as all testifying witnesses do, to tell the truth in response to questions. We decline to conclude that Pope's defense attorney's failure to anticipate a specific question and instruct Pope exactly how to respond was unreasonable.

> Even if we were to conclude otherwise, there is no evidence that Pope
> was prejudiced by defense counsel's performance. In response to the
> juror's question, Pope testified that he acquired a gun for protection
> because he lived in an unsafe area and the transaction with Hill "wasn't
> supposed to be a crime," as he was simply attempting to purchase
> marijuana. Pope's answer was a reasonable response to the juror's
> question, and Pope has not demonstrated a reasonable probability that
> a different result would have been reached but for defense counsel's
> failure to specifically instruct Pope how to respond to such a question.

*People v. Davis*, 2022 WL 881145, at * 8 (internal footnote omitted).

Once a defense attorney decides to put his or her client on the witness stand,
that attorney is "obligated to prepare" the client for his or her testimony. *See
Rayborn v. United States*, 489 F. App'x 871, 881 (6th Cir. 2012). A defendant is
entitled to a new trial if he or she can show that he or she was prejudiced by
counsel's failure to adequately prepare the defendant to testify. *Id.* at 881-82.

Petitioner is not entitled to relief on his claim because he failed to show that
he was prejudiced by counsel's alleged failure to prepare him for the jury's
question about why he was in possession of an unregistered gun and was involved
in a crime, where Petitioner's answer that he obtained a gun for protection because
he lived in a dangerous area and the transaction with the victim "wasn't supposed
to be a crime" but merely an attempt to purchase marijuana was an adequate
response to the question. Moreover, any deficiencies in counsel's preparation of
Petitioner to testify was not prejudicial and hence would not entitle Petitioner to
habeas relief on his ineffective assistance claim, in light of the fact that there was

21

compelling evidence against him, including his brother's investigative subpoena testimony and his own girlfriend testifying that Petitioner admitted to robbing the victim. *Compare Rayborn,* 489 F. App'x at 881-82 (defendant prejudiced by counsel's failure to adequately prepare the defendant to testify and entitled defendant to a new trial, where the case against the defendant was "hardly overwhelming."). Petitioner is not entitled to habeas relief on his second claim.

## IV.  Conclusion

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub,* 194 F. Supp. 2d 629,

22

659 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. <u>ORDER</u>

Based upon the foregoing, **IT IS ORDERED** that:

(1) the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be **GRANTED** leave to appeal *in forma pauperis.*


<u>s/F. Kay Behm</u>
Hon. F. Kay Behm
Dated: September 26, 2024     United States District Judge